UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENELSON NOEL,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-03199-DGE

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) AND MOTION FOR COURT-APPOINTED COUNSEL (DKT. NO. 11)

This matter is before the Court on Petitioner Denelson Noel's petition for writ of habeas corpus (Dkt. No. 10.) For the reasons identified herein, the petition is DENIED.

## I BACKGROUND

Petitioner is a native of the Bahamas and a Haitian citizen. (Dkt. No. 8 at 1.) On August 2, 2015, Petitioner was admitted to the United States on a B2 visitor visa that permitted him to remain in the United States until February 1, 2016. (*Id.* at 2.) Petitioner remained in the United

States after this date and applied for relief from removal in May 2020.[1] (*Id.*) This request for relief remains pending. (*Id.*) On August 30, 2021, Petitioner applied for temporary protected status for Haiti. (*Id.*) This application was approved in 2023, granting him lawful status through August 3, 2024. (*Id.*)

On July 19, 2026, Petitioner was arrested in Orlando, Florida.[2] (*Id.*) The same day, the Office of Enforcement and Removal Operations ("ERO") learned of Petitioner's arrest, checked records to confirm his lack of lawful status (*Id.* at 3), and issued a warrant for his arrest, as well as an immigration detainer. (Dkt. Nos. 9-2; 9-3.) On July 24, 2026, Petitioner was released to United States Immigration and Customs Enforcement ("ICE") custody in Orlando, Florida. (Dkt. No. 8 at 3.) Petitioner was then transferred to ERO El Paso Camp East Montana in El Paso, Texas, and finally to the Northwest Immigration and Customs Processing Center ("NWIPC") in Tacoma, Washington on July 28, 2026.

On September 10, 2026, the Executive Office of Immigration Review ("EOIR") issued a notice for Petitioner to appear in removal proceedings before an immigration judge. (*Id.*) Petitioner appeared in these removal proceedings on September 28, 2026, and the immigration judge continued the proceedings at his request. (*Id.*)

Petitioner first filed a petition for writ of habeas corpus on September 18, 2026. (Dkt. No. 1.) On September 21, 2026, this Court struck the initial scheduling order and ordered Petitioner to file an amended petition that included specific facts to support his cause of action.

---

[1] The application for relief is identified as a form I-589, which is the form used to file for asylum and withholding of removal. (Dkt. No. 8 at 2.)

[2] The alleged law violations were for Resisting Officer with Violence, a felony, in violation of section 843.01.1 of Florida Statutes ("Fla. Stat."), Possession of Controlled Substance without a Prescription, a felony, in violation of Fla. Stat. § 893.13.6a, Trespassing Occupied Structure or Conveyance, a misdemeanor, in violation of Fla. Stat. § 810.08.2b, Obstructing without Violence, a misdemeanor, in violation of Fla. Stat. § 843.02. (Dkt. Nos. 8 at 2; 9-1.)

(Dkt. No. 5.) Petitioner filed an amended petition on October 1, 2026, as well as a motion for court-appointed counsel. (Dkt. Nos. 10, 11.) In his petition, Petitioner argues he was unlawfully detained and requests immediate release or a bond hearing. (Dkt. No. 10 at 3.) Respondents filed a return memorandum on October 2, 2026 (Dkt. No. 7) and, with leave of this Court, a supplemental return memorandum on October 16, 2026. (Dkt. No. 14.) Respondents argue that "[t]he bond hearing the petition seeks is already available from the immigration judge" upon request, but to date, Petitioner has not requested one. (Dkt. No. 7 at 7.) Petitioner filed his traverse on October 30, 2026, arguing that he was entitled to pre-deprivation process, and that exhaustion of administrative remedies should not be required. (Dkt. No. 15.)

## II LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III ANALYSIS

### A. Petitioner's detention does not violate his Due Process rights

Petitioner is undisputedly being detained pursuant to 8 U.S.C. § 1226(a). (Dkt. No. 7 at 6.) Petitioner asserts that his detention violates due process because Respondents failed to provide adequate pre-deprivation process. (Dkt. No. 15 at 4–5.) Respondents argue that due process does not require "more process than 8 U.S.C. § 1226(a) already provides"—that is, a bond redetermination hearing by an immigration judge provided upon request. (Dkt. No. 7 at 10.)

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor weighs in Petitioner's favor as the Court agrees Petitioner maintains a liberty interest in his continued freedom. Petitioner maintains a pending application for relief from removal with USCIS, which provided Petitioner with work authorization. (Dkt. Nos. 8 at 2; 10 at 3.) Petitioner also for a time maintained temporary protected status. (Dkt. No. 8 at 2.) Thus, government has known of Petitioner's presence in the United States, granted him employment authorization, and otherwise allowed him to remain at liberty for several years.

As to the second *Mathews* factor, the Court concludes the risk of erroneous deprivation in this case is mitigated through the procedures available to Petitioner. Petitioner came to Respondents' attention because of his arrest by local law enforcement, after which Respondents exercised the procedures contained in 8 U.S.C. § 1226 to detain Petitioner. (Dkt. No. 8 at 2–3.) Based on those procedures, Petitioner is eligible for a bond redetermination hearing should he request one, a point Respondents concede. (Dkt. No. 7 at 2.) However, Petitioner has not requested a hearing and therefore has not availed himself of this process. (*Id.* at 1.) To the extent Petitioner argues he should have been provided a pre-deprivation hearing, the decisions Petitioner cites to support this position involve individuals who were released from immigration custody and then re-detained without any prior notice.[3] Those decisions are distinguishable from the present circumstances. *See Herrera v. Blanche*, No. C26-1684-MLP, 2026 WL 1733493, at *2 (W.D. Wash. Jun. 16, 2026) ("Petitioner was not released from custody and accordingly did not acquire a protected liberty interest of this kind"). Under the facts of this case, where Petitioner was not previously in immigration detention and then released, the value of additional or substitute procedural safeguards is marginal at best because Petitioner need only request a bond redetermination hearing to receive one. Thus, the second *Matthews* factor weighs in favor of Respondents.

---

[3] Petitioner cites two additional cases that are distinguishable. In *Santiago v. Noem,* 2025 WL 2792588 (W.D. Tex. Oct. 2, 2025), the court ordered release because the petitioner was protected from removal under the Deferred Action for Childhood Arrivals program and therefore the government had no legitimate interest in her continued detention. In *Moctezuma v. Henkey*, 2026 WL 18809 (D. Idaho Jan. 2, 2026), the issue involved the application of the mandatory detention provisions contained 8 U.S.C. § 1225(b) versus the discretionary detention contained in 8 U.S.C. § 1226(a). The factual and legal issues in this case are different than those found in *Santiago* and *Moctezuma*.

Regarding the third *Matthews* factor, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This factor weighs in Respondents' favor.

Weighing the *Mathews* factors, the Court concludes that Petitioner has failed to establish that his due process rights have been violated.

**B. This Court will not order Petitioner's bond hearing**

Petitioner requests that this Court grant his immediate release or order a bond hearing (Dkt. No. 10 at 3.) Respondents argue the Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief. (Dkt. Nos. 7 at 7; 14 at 6.) Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where the following factors outlined in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007) are present:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)). Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981). Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

Here, all three factors weigh against Petitioner. First, the agency and not this Court is responsible for adjudicating Petitioner's bond redetermination requests. Second, ordering Petitioner be granted a bond hearing encourages petitioners to come before this Court rather than seek a bond redetermination in the first instance. Third, while Petitioner argues recent high rates of bond denial suggest a bond hearing will not provide a reliable safeguard, the Court is not able to determine that such a hearing would in fact be inadequate or futile on these assertions alone. Therefore, the Court concludes that Petitioner must exhaust his administrative remedies and request the bond hearing available to him before seeking relief from this Court.

## IV ORDER

For the reasons articulated herein, Petitioner's petition for writ of habeas corpus (Dkt. No. 10) is DENIED without prejudice.[4] Because the Court denies Petitioner's habeas petition, Petitioner's motion for court-appointed counsel (Dkt. No. 11) is DENIED without prejudice as moot.

Dated this 4th day of November 2026.

David G. Estudillo
United States District Judge

[4] Petitioner also asserted he was adopted by United States citizens as a child. (Dkt. No. 10 at 3.) However, Petitioner provides no legal authority to support an argument that he obtained citizenship through such adoption.